# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs August 22, 2012

## TAJAY VAUGHN v. STATE OF TENNESSEE

### Appeal from the Criminal Court of Sumner County
No. 967-2010     Dee David Gay, Judge

### No. M2012-00151-CCA-R3-PC - Filed September 19, 2012

Tajay Vaughn ("the Petitioner") filed a petition for post-conviction relief from his convictions for aggravated burglary, especially aggravated robbery, and aggravated assault. Pursuant to his plea agreement, the Petitioner received an effective sentence of thirty-three years in the Tennessee Department of Correction. In his petition, he argued that he was denied effective assistance of counsel in conjunction with his guilty plea and that his plea was constitutionally infirm. After an evidentiary hearing, the post-conviction court denied relief. The Petitioner now appeals. Upon our thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment
### of the Criminal Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P. J., and ALAN E. GLENN, J., joined.

Jon Joseph Tucci, Nashville, Tennessee (on appeal), and Thomas Boyers, Galatin, Tennessee (at post-conviction hearing), for the appellant, Tajay Vaughn.

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel Harmon, Assistant Attorney General; L. Ray Whitley, District Attorney General; and C. Ronald Blanton, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

A Sumner County grand jury indicted the Petitioner on four counts: aggravated burglary; especially aggravated robbery; aggravated assault; and possessing a firearm during the commission of a dangerous felony. On February 11, 2010, the Petitioner pleaded guilty

to aggravated burglary, especially aggravated robbery, and aggravated assault. The indicted count of possessing a firearm during the commission of a dangerous felony was dismissed. Pursuant to the Petitioner's plea agreement, the Petitioner was sentenced to concurrent sentences of three years at 30% on the aggravated burglary count, twenty-two years at 100% on the especially aggravated robbery count, and three years at 30% on the aggravated assault count, for a total effective sentence of twenty-two years at 100%.

*Guilty Plea*

At the guilty plea hearing, the State recited the factual basis for the Petitioner's plea as follows:

> The facts of this case are . . . that on May the 11th of 2009, in Sumner County, Tennessee, Portland, [the Petitioner], along with [his co-defendants,] drove from Nashville up to Portland at which time they entered the house of Mr. Anderson and his wife. . . .

> After entering the house . . . – while they were armed carrying – and masked, for the purpose of stealing drugs, money, and weapons, they entered the resident [sic]. [The Petitioner] went to the – the testimony would be he went to the back bedroom where Ms. Anderson was . . . at which time [the Petitioner] proceeded to violently beat her with his fists and with his weapon. She was hospitalized as a result of the beating that she took that night.

> During the course of this robbery a shooting took place – [the Petitioner] was not the shooter – where a lady was [shot] 10 times but lived.

> [The Petitioner and co-defendants] left the house. [The Petitioner] was a passenger in the front seat of the car as they left. It's my understanding they were stopped on I-65 around Ridgetop by a White House officer. While waiting for backup, the car decided to drive away. At which time they drove away, a pursuit ensued all the way into Davidson County where a pretty violent wreck took place. . . .

> [The Petitioner] gave a statement to authorities of his participation in this event. They recovered some of the merchandise that was taken from the residence.

Upon hearing the State's factual allegations, the Petitioner's counsel informed the trial court that the Petitioner did not agree with "some of the specifics" but nevertheless agreed that he was guilty of the charges to which he pleaded.

The Petitioner testified at the guilty plea hearing that he graduated from high school. He confirmed that he understood the convictions for which he was pleading guilty and their respective sentences, as well as the fact that the sentences would run concurrently. He acknowledged that he understood that he was waiving his right to a trial by jury where he could present a defense and cross-examine the State's witnesses; his right to have an attorney represent him at trial; and his right to an appeal and representation on appeal by an attorney. He also agreed that he currently was not taking any medications; that he was entering into his plea freely and voluntarily; that no additional promises were made in the formation of the plea agreement; and that no one was forcing him to enter into his plea.

Additionally, the following colloquy took place between the trial court and the Defendant:

> Court: Good. Now, are you satisfied with the services of [trial counsel]?
>
> Petitioner: Yes, sir.
>
> Court: Do you believe that he's given you good advice and good representation here?
>
> Petitioner: Yes, sir.
>
> Court: Now, is there anything that you wanted him to do that he didn't do that was within his control?
>
> Petitioner: Get me a lesser sentence, but –
>
> Court: Okay. Do you understand that's outside of his control? That comes from over on this side of the court and he can't control that. Do you understand that?
>
> Petitioner: Yes, sir.

The trial court accepted the Petitioner's guilty plea. Before the conclusion of the hearing, trial counsel and the State also asked the Petitioner several questions on the record. The Petitioner acknowledged that trial counsel sent all of the paper discovery, played him his video and audio statements, and reviewed the preliminary hearing tape. The Petitioner confirmed that there was no other evidence of which he was aware that trial counsel did not show or provide.

The Petitioner subsequently filed for post-conviction relief on December 22, 2010, alleging that he had received ineffective assistance of counsel in conjunction with his guilty plea and that his plea was constitutionally infirm. Specifically, the Petitioner argued that his appointed attorney ("Trial Counsel") was ineffective in not requesting a psychological evaluation and not seeking mitigation of the Petitioner's charges or sentence in light of the Petitioner's learning and psychological issues. The Petitioner's mother and Trial Counsel testified at the post-conviction evidentiary hearing.

Trial Counsel testified that he had practiced law since October of 2000, and approximately half of his practice was criminal defense. In criminal defense cases, his custom was to prepare a detailed case summary for each of his clients. He requested the client's case file and discovery, and then he prepared and sent a duplicate copy of all the information he had obtained to his client. Once both he and the client have had sufficient time to review the information, he met with his client to discuss their plan for handling the case. Trial Counsel stated that, pertaining to this case, he met with the Petitioner four times prior to the Petitioner entering a guilty plea. In those meetings, they reviewed the case and watched the Petitioner's recorded statement. Trial Counsel also met with the Petitioner on the morning of the guilty plea and reviewed and discussed the Petitioner's plea agreement as well as the rights the Petitioner was waiving.

Trial Counsel's file indicated that the Petitioner was a graduate of Maplewood High School, and Trial Counsel confirmed that the Petitioner and his mother had attested to this fact. However, neither the Petitioner nor his mother ever told Trial Counsel that the Petitioner was a special education student. Trial Counsel only remembered the Petitioner's mother informing him that the Petitioner had Attention Deficit Hyperactive Disorder ("ADHD"). Trial Counsel did not believe, however, that having ADHD would keep the Petitioner from understanding the charges against him and the plea process. Post-conviction counsel showed Trial Counsel a document indicating that the Petitioner's intelligence quotient ("IQ") was eighty. Trial Counsel stated that it surprised him that the Petitioner had such a low IQ because the Petitioner "was always very . . . knowledgeable of his case." Trial Counsel acknowledged that he would have attempted to use this information about the Petitioner had he been aware, but he insisted that the Petitioner never brought it up. He added, "I didn't think there was any question of whether or not he could appreciate the rightfulness or wrongfulness of his actions."

Trial Counsel also stated that knowing the Petitioner's low IQ would not have changed the way he interacted with his client. He testified, "I try to explain everything as basic as you can to everybody and not to assume that they're going to understand anything." He added, "Obviously, in this case, it didn't really matter a whole lot what I said to him. It

was more important about what he said to the police. . . . [The Petitioner and co-defendants] were caught red-handed." In light of the State's overwhelming proof, Trial Counsel thought that the best effort he could make on behalf of the Petitioner was "to get any mercy" from the State. He believed this case to be a "slam-dunk conviction" and did not think that the trial court would show any mercy in sentencing based on many potentially applicable enhancement factors. Furthermore, Trial Counsel stated that "this was the most trouble [the Petitioner] had ever been in but he had been in trouble before. It wasn't his first rodeo. I felt like he understood everything we were doing in the process."

Trial Counsel remembered that the Petitioner's second interview with police officers was the only instance when the Petitioner did not seem to understand the situation. According to Trial Counsel, the Petitioner was perfectly coherent in the first interview when he relayed the sequence of events of the robbery. Then, the Petitioner came back on a second occasion and, in Trial Counsel's opinion, "was malingering. He's faking that he can't remember and he alleges a concussion." The Petitioner requested that Trial Counsel move to suppress his first statement due to a concussion, but Trial Counsel told the Petitioner that, given that his first statement was "clear as a bell," filing a motion to suppress would appear as if the Petitioner were "faking and malingering."

Trial Counsel noted that the State's first plea offer was for twenty-four years and that he was able to negotiate it down to twenty-two years. He read several letters from the Petitioner, including the following letter that stated:

> Thank you for talking to me about my case today. You really made me feel more comfortable about the situation I'm in. I was really feeling like my last lawyer was out to sabotage my case. You really made a lot of sense to me today. You explained things to me in a way that had not been done before. My life is in your hands. For the first time since this incident occurred I feel like the person fighting for me actually cares. I understand that this is a very serious matter.

Audrey Vaughn, the Petitioner's mother, testified that she first realized her son had emotional or psychiatric problems when the Petitioner was approximately six years old. She came home to find that the Petitioner had stuck thumb tacks into the flesh of his leg, from his thigh to his knee. She took him to Vanderbilt and requested a psychiatric evaluation on the Petitioner but was refused the evaluation. Ms. Vaughn eventually placed him in a thirty-day facility called First Family. She stated that throughout middle school and high school the Petitioner was in the Modified Individual Program due to his ADHD and his learning disability. According to Ms. Vaughn, the Petitioner did not want people to know that he was in special education classes. She also testified that, after hearing the letters from the Petitioner to Trial Counsel, she believed "someone else had to help him with those letters

because the wording are [sic] not words that he could either spell or understand, to my knowledge."

Ms. Vaughn thought that it would be possible for someone who only spends a short period of time with her son to not realize the Petitioner's mental issues because the Petitioner could hide it from that person. On cross-examination, she stated that although the Petitioner struggles with reading he "would talk to you until you were blue in the face." The State asked whether the Petitioner could "carry on an intelligent conversation," and Ms. Vaughn responded, "he can carry on a conversation and a lot of the words that he would use would be out of place, but he would finally get his intent across to you."

At the conclusion of the hearing, the post-conviction court stated:

I can tell you on the front end, [Petitioner], that looking at the facts in this case, and the evidence in this case, you can be thankful for the job that your attorney did, and that you only got 22 years at a hundred percent for the crime that you committed.

The post-conviction court found it hard to believe that the Petitioner did not understand the nature and circumstances surrounding his guilty plea based on his extensive, forty-page petition for post-conviction relief. Although the Petitioner had an IQ of eighty and a diagnosis of ADHD, the post-conviction court was "impressed" by Trial Counsel's representation of the Petitioner. The court stated:

[Trial Counsel] stated that [the Petitioner] was no different from any others that he had represented. He explained everything as basically as he could. That he always explained in very basic terms. He explained the issues that he had to deal with. That, I believe he said, that the defendants were caught red-handed. It was a slam-dunk case. The female victim was shot many times. This was a home invasion. There were four people. There were guns. And in his opinion what he received by way of a guilty plea was better than what he would receive at a trial and I confirm that today, too.

The initial offer was 21 years at a hundred percent plus three years at 30 consecutive. [Trial Counsel] was able to get the offer down to 22 at a hundred. . . .

. . . .

I thought very compelling to me was the letters that the [Petitioner] wrote [Trial Counsel] on January 20, 2010, December 14, 2009, January 13,

2010. He appeared to be a good communicator. They were [very well-]written, raised good issues. The [Petitioner's] mother says these were things that her son couldn't write, but I beg to differ with her because he was able to discuss these issues with his attorney. The attorney felt like there w[ere] no communication issues.

The only note where [Trial Counsel] stated that the [Petitioner] possibly didn't understand something was in the second interview that he had with the [Petitioner], and [Trial Counsel] was very clear that he felt like that on the day that his client was malingering. . . . [Trial Counsel] felt like this was an attempt to try to get [the Petitioner's] statement suppressed. Which goes to showing me that [the Petitioner] knew the circumstances and the evidence against him.

Thus, as to the Petitioner's plea being knowing, intelligent, and voluntary, the post-conviction court found "overwhelmingly" that the Petitioner fully understood the circumstances surrounding his decision to enter a guilty plea. The court, accordingly, denied relief on this issue.

Second, turning to the Petitioner's ineffective assistance of counsel claim, the post-conviction court found "absolutely no basis in the evidence in this case where [Trial Counsel] was deficient in any extent. He thoroughly reviewed the evidence as thoroughly as any attorney could. He thoroughly communicated with the [Petitioner] as thoroughly as any defense attorney could."

The post-conviction court accredited Trial Counsel's belief that the Petitioner had no problem communicating with Trial Counsel. The court found that the Petitioner failed to prove by clear and convincing evidence that Trial Counsel was in any way deficient in his representation of the Petitioner. Moreover, the court stated, "[t]o the contrary, I find that he did an exemplary job in representing you."

Accordingly, the post-conviction court found it unnecessary to make a finding regarding any prejudice that the Petitioner suffered. Therefore, the court denied the Petitioner post-conviction relief. The Petitioner timely appealed, arguing that trial counsel was deficient in his representation of the Petitioner and that his plea was not knowing, intelligent, or voluntary.

**Analysis**

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of

the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[1] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)). Our Supreme Court has explained that:

_____

[1] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)).

When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). In the context of a guilty plea, our analysis of this prong

focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985). See also Calvert v. State, 342 S.W.3d 477, 486 (Tenn. 2011).

Turning to the Petitioner's specific allegations, we hold that the evidence does not preponderate against the post-conviction court's findings. Trial Counsel's testimony

established that Trial Counsel communicated with the Petitioner extensively and visited him on four occasions prior to the plea hearing, that Trial Counsel thoroughly reviewed the charges and the evidence with the Petitioner, that Trial Counsel discussed with the Petitioner the gravity of the charges and the potential ramifications of proceeding to trial, and that Trial Counsel successfully reduced the plea bargain offer and explained it to the Petitioner as well as the rights the Petitioner would waive. Although the Petitioner presented evidence regarding his low IQ and his enrollment in special education courses, Trial Counsel was completely unaware of either fact. The Petitioner's mother did not inform Trial Counsel about these issues and, in fact, told him only that the Petitioner had ADHD. Moreover, Trial Counsel stated that he had no trouble communicating with the Petitioner but that he nevertheless explained everything to the Petitioner using the most basic of terminology. Thus, we agree with the post-conviction court that the Petitioner has failed to establish by clear and convincing evidence that Trial Counsel was deficient in any manner. Accordingly, the Petitioner is not entitled to post-conviction relief on the grounds of ineffective assistance of counsel.

*Validity of Guilty Plea*

The Petitioner also asserts that the post-conviction court erred in finding that the Petitioner's pleas were knowingly and voluntarily entered. However, the Petitioner failed to provide any argument or case law separate from his ineffective assistance claim in support of this argument. Thus, we agree with the post-conviction court that the Petitioner has failed to prove by clear and convincing evidence that his pleas were constitutionally infirm.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. See Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977) superseded on other grounds by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Boykin, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty. Jaco v. State, 120 S.W.3d 828, 831 (Tenn. 2003) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In Mackey, 553 S.W.2d at 341, our Supreme Court set forth the procedure that a trial court should follow when accepting a guilty plea in order to ensure that a defendant's plea is knowing, voluntary, and intelligent. See also Tenn. R. Crim. P. 11(b). A trial court must "substantially comply" with this procedure. State v. Newsome, 778 S.W.2d 34, 38 (Tenn. 1989).

The post-conviction court found it difficult to believe that the Petitioner was unable to understand the nature and circumstances surrounding his plea based on the Petitioner's ability to draft an extensive, forty-page petition for post-conviction relief. The court also pointed to the letters written by the Petitioner to Trial Counsel, noting that the letters were

well-written and "raised good issues." The post-conviction court accredited the testimony of Trial Counsel that the Petitioner appeared to be "faking and malingering" in order to get his first statement suppressed. The post-conviction court concluded that the Petitioner had failed to establish that his plea was not intelligent, knowing, and voluntary and, accordingly, that the Petitioner was not entitled to post-conviction relief on the basis that his guilty plea was constitutionally infirm.

The evidence does not preponderate against the post-conviction court's findings. The Petitioner has failed to establish that he lacked the ability to knowingly, intelligently, and voluntarily enter into his plea agreement. Accordingly, the Petitioner is not entitled to post-conviction relief on this basis.

## CONCLUSION

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE